FAY, Circuit Judge:
 

 Appellant Collateral Control Corporation appeals the denial of its petition to be substituted in bankruptcy proceedings for the claims of farmers who recovered judgments from it in a state court action. We hold that the order denying substitution is an appealable order and affirm the denial of the petition.
 

 In 1972, appellant Collateral Control Corporation, formerly New York Terminal Warehouse Company (NYTCO), entered into a field warehousing lease agreement with Covington Grain Company Incorporated, now bankrupt. Under the agreement, NYTCO leased a bagged goods warehouse containing an office and several outside bins from Covington at Andalusia, Alabama. NYTCO had placed on the grounds about twelve signs bearing NYTCO’s name and stating that property in the warehouses was covered by warehouse receipts issued in accordance with the laws of Alabama.
 

 During the 1974 soybean harvesting season, some ninety farmers deposited soy
 
 *1359
 
 beans or corn in the Covington facilities under an arrangement which allowed the farmers to sell their grain at a later date and pay a storage fee to Covington. Transactions with the farmers were handled by either Morris Rabren, President of Coving-ton Grain, or Mary Wishum, bookkeeper at Covington. Under the lease agreement between NYTCO and Covington, NYTCO paid Wishum’s salary and Covington reimbursed NYTCO. Wishum had full control of all grain going into and out of the storage facilities.
 

 Grain delivered by the farmers was accepted by Covington, and Covington issued weight tickets to the farmers. The grain was stored in NYTCO’s leased warehouses, and some of it was shipped immediately in an unpriced condition. Morris Rabren, president of Covington, testified that he had been “hedging” on board of trade contracts, that is, dealing in the soybean futures market, and that most of the farmers knew this. When the market rose, Rabren was unable to honor his commitments to sell and still repurchase grain sufficient to meet demands of the soybean and corn farmers who held weight tickets or warehouse receipts from him. The loss from “hedging” and the enforced sale of grains which he had already shipped, caused a deficiency resulting in the bankruptcy of Covington Grain.
 

 Covington Grain filed a Chapter XI proceeding in the Bankruptcy Court in the Middle District of Alabama on January 29, 1975, and when the plan was not approved, it was adjudicated a bankrupt on March 4, 1975. The first meeting of creditors was held on March 19, 1975. The soybean and corn farmers filed timely proofs of claim in the bankruptcy proceedings.
 

 The farmers also filed suit against NYT-CO, Rabren, and Wishum in the Circuit Court of Covington County, Alabama, alleging breach of contract, conversion, fraud, negligence, and wantonness for the loss of their deliveries. NYTCO filed a third party complaint against J. E. McDonald, a principal of Covington and against Rabren, under an indemnity agreement attached to the NYTCO-Covington warehousing agreement. Covington Grain was not allowed to be brought into the proceeding as it was in bankruptcy. The trial resulted in a jury verdict for the farmers against NYTCO in the ultimate amount of $1,169,509.71. The trial court directed a verdict against McDonald and Rabren for the same amount in favor of NYTCO. NYTCO had not sought to collect from McDonald and Rabren as of the time of argument on this appeal. The case was affirmed by the Supreme Court of Alabama in
 
 NYTCO Services, Inc. v. Wilson,
 
 351 So.2d 875 (Ala.1977). The Alabama Supreme Court determined that the transactions with the farmers were bailments. It held that although Rabren and Wishum did not have express authority to act on the behalf of NYTCO, they were agents of NYTCO by estoppel, and NYTCO was liable for their acts. The court found that the soybean and corn farmers had reasonable cause to believe that Rabren and Wishum had authority to accept their grains on behalf of NYTCO.
 

 NYTCO paid the judgments in full and, except in the case of two corn farmers, took no assignments of any of the claims filed in the bankruptcy proceedings. On December 1, 1978, it filed a petition in bankruptcy court seeking to have itself substituted as a party claimant as the owner of the claims of the farmers under Section 2(a)(6) of the Bankruptcy Act (former 11 U.S.C. § 11(a)(6) (1976)). The decision of the bankruptcy judge was to deny substitution. The District Court for the Middle District of Alabama affirmed the denial.
 

 Appealability
 

 Appellee asserts that an order denying a petition for substitution is not an appeala-ble order. Our decision in
 
 Virginia Land Company v. Miami Shipbuilding Corp.,
 
 201 F.2d 506 (5th Cir. 1953) has been read as holding that an order denying substitution is not appealable.
 
 See
 
 3B
 
 Moore’s Federal Practice
 
 ¶ 25.03[2] (2d Ed.). In the
 
 Virginia Land
 
 case, however, the issue before the court was the timeliness of the appeal under Fed.RCiv.P. 73(a) (abrogated Dec. 4, 1967 and
 
 superseded by
 
 Fed.R.App.P. 4(a)). In that case, the appealing party, Virginia Land Company, had failed to file an appeal within the thirty days allowed and had filed
 
 *1360
 
 an untimely motion for rehearing as well. The court held that the untimely motion for rehearing did not toll the running of the time for appeal. In dicta, the court said that the order was not one for dismissal and thus was not final under 28 U.S.C. § 1291. The court said:
 

 It was merely one entered under Rule 25(c), denying substitution of parties, an order which rested in the sound discretion of the district court,
 
 and
 
 which was not appealable, (emphasis added)
 

 201 F.2d at 508.
 

 We hold that in the case before us, the order denying the petition for substitution is one having the operative finality which makes it reviewable under the collateral order doctrine of
 
 Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We recently reviewed the requirements of the collateral order doctrine in
 
 Bennett v. Behring Corp.,
 
 629 F.2d 393 (5th Cir. 1980) and
 
 In re Grand Jury Proceedings: In Camera,
 
 636 F.2d 81 (5th Cir. 1981).
 

 In order to be reviewable under the collateral order doctrine, an order must 1) be independent and easily separable from the substance of the other claims in the action; 2) present a need to secure prompt review in order to protect important interests of any party; 3) be examined in the light of practical, rather than narrowly technical, considerations.
 
 In re Nissan Motor Corporation Antitrust Litigation,
 
 552 F.2d 1088 (5th Cir. 1977);
 
 Bennett
 
 v.
 
 Behring Corp.,
 
 629 F.2d 393 (5th Cir. 1980).
 

 Under the facts before us, the order denying substitution is a matter easily separable from the bankruptcy proceedings.
 
 [1]
 
 Because NYTCO was barred from impleading the bankrupt in the state court proceedings, and because it failed to file claims in the bankruptcy proceedings, the denial of the petition for substitution will mean a total bar to recovery. The issue is of practical, substantive importance to NYTCO and the other creditors in the bankruptcy proceeding. If not appealable, it would be beyond review.
 
 Cohen
 
 was intended to cover just such a situation.
 

 Abuse of Discretion
 

 Bankruptcy Rule 725 adopts Fed. R.Civ.P. 25 as the procedure for substitution. Rule 25 provides that in case of any “transfer of interest,” the action may be continued by or against the original party unless the court on motion directs the person to whom the interest is transferred to be substituted. The granting of the petition for substitution is, therefore, at the discretion of the trial court and will be reviewed under the abuse of discretion standard. We hold that in the case before us, neither the bankruptcy court, nor the district court abused its discretion in not allowing the substitution.
 

 In denying the petition, the bankruptcy court and the district court accepted and felt bound by the findings of the Alabama Supreme Court in
 
 NYTCO Services, Inc. v. Wilson,
 
 351 So.2d 875 (Ala.1977), that Rabren and Wishum were agents by estoppel of NYTCO. Appellant urges that the case of
 
 Brown v. Felson,
 
 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) stands for the proposition that the bankruptcy court can look behind the findings of the state court.
 
 [2]
 
 
 *1361
 
 In
 
 Brown,
 
 the issue was whether a bankruptcy court may consider evidence extrinsic to the judgment and record of a prior state court collection suit when determining whether a debt was dischargeable. The Supreme Court allowed the extrinsic evidence bearing on the dischargeability issue because it was obvious that the creditor was not attacking the judgment itself but seeking to rely on it. The question of dis-chargeability under section 17 of the Bankruptcy Act (11 U.S.C. § 35 (1976)) would involve material irrelevant in the ordinary collection proceeding. If a state court could expressly rule on section 17 dischargeability questions, then giving finality to the state court rulings would undercut Congress’ intention to commit section 17 issues solely to the jurisdiction of the bankruptcy courts.
 
 See
 
 H.R.Rep.No. 91-1502, 91st Cong., 2d Sess.,
 
 reprinted in
 
 [1970] U.S.Code Cong.
 
 &
 
 Ad.News, 4156, 4157;
 
 Brown v. Felson,
 
 442 U.S. 127, 136, 99 S.Ct. 2205, 2211-2212, 60 L.Ed.2d 767, 774 (1979).
 

 In the case before us, there is no overriding federal policy preventing the bankruptcy court from accepting the findings of the state court. The question of the agency by estoppel of Rabren and Wishum was fully litigated in the state court. Transcripts of the proceedings in the Circuit Court of Cov-ington County, Alabama, and the record on appeal, as well as the opinion of the Alabama Supreme Court, were introduced into evidence in the hearing on the petition for substitution by agreement of the parties. The parties should not be heard to complain that the court reached its determination on the basis of evidence submitted to it.
 
 Bankruptcy Proceedings
 

 The bankruptcy judge held that because the farmers’ action against NYTCO sounded in tort, and the farmers’ claims in the bankruptcy proceeding sounded in contract or quasi-contract, substitution was not authorized under Fed.R.Civ.P. 25(c). Under Rule 25(c), the court may direct that the person to whom the interest has been transferred be substituted. The Rule, however, is procedural only and does not affect the substantive rights of the parties which are determined by state law.
 
 Ransom v. Brennan,
 
 437 F.2d 513 (5th Cir. 1971),
 
 cert. denied,
 
 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1970);
 
 United States for the Use of Acme Granite & Tile Co. v. F. D. Rich Co.,
 
 441 F.2d 1143 (9th Cir. 1971),
 
 cert. denied,
 
 404 U.S. 823, 92 S.Ct. 48, 30 L.Ed.2d 51 (1971); 4A C. Wright & A. Miller,
 
 Federal Practice and Procedure
 
 § 1952. We cannot say that the conclusion of the bankruptcy judge, that the difference in the natures of the actions under Alabama law prevented a substitution based on transfer of interest, was an error amounting to an abuse of discretion.
 
 [3]
 

 District Court Proceedings
 

 As we understand it, NYTCO’s argument in the district court was that the district abused its discretion by misapplying the law to the facts of this case. First, it argues, the court erred in accepting the holding of the Supreme Court of Alabama that Rabren and Wishum were agents by estoppel of NYTCO, and thus in holding that Coving-ton and NYTCO were joint tortfeasors. In the alternative, it argues that the Court erred in holding their could be no contribution among joint tortfeasors in this case. In support of the latter point, it argues that the Alabama law barring contributions among joint tortfeasors does not apply where one party is held derivatively liable through the acts of its agents.
 

 Our holding that the court did not abuse its discretion in accepting and relying upon the Alabama Supreme Court holding eviscerates NYTCO’s first argument. The
 
 *1362
 
 doctrine of agency by estoppel is based upon the same elements as the concept of apparent authority,
 
 Pearson v. Agricultural Insurance Co., 247
 
 Ala. 485, 25 So.2d 164 (1946);
 
 Union Oil Company
 
 v.
 
 Crane,
 
 288 Ala. 173, 258 So.2d 882 (1972). The authority of the agent is made apparent by acts of the principal, in this case the posting of signs by NYTCO, and it is the principal which is held liable under the doctrine.
 
 Johnson v. Shenandoah Life Insurance Co.,
 
 291 Ala. 389, 281 So.2d 636 (1973);
 
 see NYTCO Services Inc. v. Wilson,
 
 351 So.2d 875, 881 (Ala.1977). NYTCO was liable to the farmers because it appeared to act through Rabren and Wishum, as its agents by estoppel, so as to cause the farmers to rely on its notices.
 

 Covington, had it been sued, would have been liable to the farmers under principles of respondeat superior for the negligent acts of its servant Rabren. What we have in this case, is two corporations each independently liable to the farmers. Under Alabama law, joint tortfeasors cannot have contribution.
 
 Consolidated Pipe & Supply Company, Inc.
 
 v.
 
 Stockham Valves & Fittings,
 
 365 So.2d 968, 970 (Ala.1978);
 
 Sherman Concrete Pipe Machinery
 
 v.
 
 Gadsden Pipe Co.,
 
 335 So.2d 125 (Ala.1975).
 

 In its argument that the Alabama law allows contribution among joint tort-feasors when the tortfeasor is only derivatively liable, NYTCO is only half correct. Under the principles enunciated in
 
 American Southern Insurance Co. v. Dime Taxi Service, Inc.,
 
 275 Ala. 51, 151 So.2d 783 (Ala.1963), a master is entitled to recover from his servant damages which the master has been required to pay by reason of the negligence of his servant.
 
 Dime Taxi, supra
 
 151 So.2d at 785,
 
 citing Huey v. Dykes,
 
 203 Ala. 231, 82 So. 481 (1919). The Court in
 
 Dime Taxi
 
 further stated, “The rule that there is no contribution between joint tort-feasors does not apply in instances in which one tortfeasor is liable only by reason of the negligence or fault of the other. In such instance, as between the parties, the one acting in the representative capacity [the servant] and himself guilty of negligence must first respond in damages.” 151 So.2d at 785. This means that NYTCO would have an action over against its negligent servants, Rabren and Wishum, and that Covington would have an action over against its negligent servant, Rabren. It does not, however, put the parties in such a relationship as to give NYTCO the right to stand in the shoes of the farmers against Covington.
 

 NYTCO may have an independent claim against Covington. It would have been perfectly proper for NYTCO to have filed a timely petition in the bankruptcy court to assert such. This was not done. What NYTCO has no right to do is attempt to assert the claims of the farmers. Recognizing that subrogation is an equitable doctrine and should be broadly construed, we, nevertheless, cannot say that the United States District Court for the Middle District of Alabama abused its discretion in denying the petition for substitution.
 

 AFFIRMED.
 

 [1]
 

 . We decline to discuss whether this situation presents an order entered in a “proceeding in bankruptcy” or a “controversy arising in a proceeding in bankruptcy” under section 24(a) of the Bankruptcy Act (former 11 U.S.C. § 47(a) (1976)),
 
 see
 
 2 Collier on Bankruptcy ' 24.11 24.12 (14th Ed.). This court in
 
 In re Durensky,
 
 519 F.2d 1024, 1027 (5th Cir. 1975) attempted to clarify the distinction, but because we view the order in the case before us as having operative finality, we need not classify it under section 47(a). Fortunately, the section has been replaced by 28 U.S.C. § 1293 and 28 U.S.C. § 1408 (Supp. II 1978) which abandon the confusing distinction.
 

 [2]
 

 . Appellant also cited an earlier Supreme Court decision,
 
 Pepper v. Litton,
 
 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) as authority for the proposition that the bankruptcy court was not required to accept the findings of the state court. In that case, however, the Court held that the underlying issue of the validity of the claim had not been litigated in the state court proceeding in which the trustee challenged the judgment because the state confession of judgments statute was not complied with. The case is thus distinguishable from the one here being reviewed.
 

 [3]
 

 . In the bankruptcy context, Rule 25(c) has been used to allow a replaced but undischarged reorganization trustee to recover out of the bankruptcy estate amounts owed as creditors’ claims to former employees through whose wrongful acts the trustee incurred liability in re
 
 Federal Facilities Realty Trust,
 
 220 F.2d 495 (7th Cir. 1955) and to allow a trustee in bankruptcy to be substituted for the trustee of an inter-vivos trust created on behalf of the debtor in an action to set aside a voidable preference,
 
 Nanz Trustee, Inc. v. American National Bank & Trust Company of Chicago,
 
 423 F.Supp. 930 (E.D.Wis.1977). In neither case was a person not already a party seeking to be brought in creating a new relationship under Rule 25.