FAY, Circuit Judge:
 

 Appellant Collateral Control Corporation appeals the denial of its petition to be substituted as claimant for a portion of Commercial Bank’s claims against the bankrupt for unpaid promissory notes secured by grain held in appellant’s warehouse. We affirm the decision of the district court.
 

 This dispute arises from the same facts as that in
 
 In re Covington Grain Co., Inc. v. Wiley Deal,
 
 638 F.2d 1357 (5th Cir. 1981). In that case, Collateral Control Corporation (NYTCO) sought to be substituted
 
 *1364
 
 in the bankruptcy proceedings for the claims of farmers who had recovered judgments against it. In the case at bar, NYTCO seeks to be substituted for the claims of the Commercial Bank of Andalusia, Alabama (Bank), which received payments from NYTCO in settlement of a cross claim against NYTCO in a civil action in which NYTCO and the Bank were defendants.
 

 During January, 1975, the Bank extended to Covington Grain Company, now bankrupt, loans secured by real estate and by specific amounts of commodities.
 
 [1]
 
 The commodities as security were evidenced by warehouse receipts executed by NYTCO “for the account of” the Bank. Under terms of the receipts, NYTCO was obligated to deliver the grains to the Bank on demand. Under terms of the loan agreement, the Bank could call for the security upon default of the debtor, Covington.
 

 Covington defaulted and the Bank called upon NYTCO to deliver the grains and corn. NYTCO was unable to delivery 7,036 bushels of soybeans and 1,079 bushels of corn. The Bank sued NYTCO for the value of the missing grains and NYTCO paid the Bank $47,428.50 in settlement. On May 1, 1975, the Bank filed a proof of claim in Covington’s bankruptcy proceedings. The Bank and the trustee applied to the bankruptcy court for approval of an agreement reached by them under which the Bank would receive the proceeds of the sale of the real estate securing one of the loans, plus interest, in settlement of all its claims against the bankrupt’s estate. NYTCO objected to approval of the settlement proposal and filed in the bankruptcy court a petition to be substituted as owner of the Bank’s claim to the extent of its payment to the Bank. The Bankruptcy Court denied the petition and the District Court affirmed.
 

 Appellees, Wiley Deal, Trustee in Bankruptcy, and Dreyfus Corp. and 85 soybean farmers, creditors of the bankrupt, raise the question whether an order denying substitution is appealable. Rather than expound on the subject again, we adopt the reasoning of
 
 In re Covington Grain Company, Inc. v. Wiley Deal,
 
 638 F.2d 1357, holding that the order is appealable under the collateral order doctrine.
 
 See also Cohen v. Beneficial Ind. Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949);
 
 Bennett v. Behiring Corp.,
 
 629 F.2d 393 (5th Cir. 1980);
 
 In re Grand Jury Proceedings, In Camera,
 
 636 F.2d 81 (5th Cir. 1980).
 

 NYTCO presents two arguments for its position that it should be substituted for the Bank’s claim: 1) that the equitable doctrine of subrogation operates to require a transfer of interest in the claim from the Bank to NYTCO through the equity jurisdiction of the bankruptcy court, Bankruptcy Rule 725, and Fed.R.Civ.P. 25(c); 2) that NYT-CO’s position as field warehouseman is similar to that of a guarantor of a debt of Covington’s. Having paid Covington’s debt, to the lender, NYTCO argues that it should be subrogated to the rights of the lender against the debtor. Both of these arguments misconceive the status of NYT-CO as field warehouseman in a secured transaction.
 

 Once again we note that the abuse of discretion standard governs this appeal. As we stated in Covington No. 79-3726, Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands. In seeking to be substituted for the claim of the Bank through subro-gation, NYTCO is seeking to have us recognize a transfer of interest in the bankruptcy claim based on a settlement approved by the Bankruptcy Court and to which NYTCO objected. The better procedure would have been to file a claim against the bankrupt in the bankruptcy proceedings or to ask for an assignment from the Bank. Under the circumstances of this case, the district court was correct in affirming the bankruptcy
 
 *1365
 
 court’s refusal to recognize a transfer of interest.
 
 [2]
 

 We agree with the appellees that in its second argument, NYTCO erroneously portrays the nature of field warehousing. Judge Griffin Bell defined field warehousing in this court’s decision in
 
 Lawrence Warehouse Co. v. McKee,
 
 301 F.2d 4, 6, (5th Cir., 1962):
 

 Field warehousing is a term applied to an arrangement whereby a wholesaler, manufacturer, or merchant, finances his business through the pledge of goods remaining on his premises. The arrangement is valid and effective where there is an actual delivery to the warehouseman by the bailor who has hired the warehouseman and given him exclusive possession of the warehouse goods. The warehouseman in turn issues warehouse receipts which serve to secure loans made by third parties to the bailor on the security of the deposited goods. In effect, it is an arrangement whereby the borrower, instead of taking his goods to the warehouse, arranges for the warehouseman to come to his premises. It is a limited type of warehousing, as distinguished from a public warehouse, (citations omitted)
 

 Under the arrangement, NYTCO is a bailee, defined in Ala. Code tit. 7 § 7-102(l)(a) (1975), as a person who by a warehouse receipt acknowledges possession of goods and contracts to deliver them. Under Section 7-403, NYTCO was obligated to deliver the goods to the person to whom delivery is to be made as specified in the nonnegotiable receipt, unless delivery was excused by the listed statutory excuses.
 
 [3]
 
 NYTCO has established no excuse for non delivery, and its failure to deliver upon proper demand makes it primarily liable to the creditor, the bank. By issuing the nonnegotiable receipts in favor of the Bank, NYTCO made itself separably and primarily liable to deliver
 
 the collateral itself
 
 to the Bank. Ala. Code, tit. 7 § 7-403(1),
 
 see UTICA National Bank & Trust Co. v. Happy Wheat Growers,
 
 558 F.2d 279 (5th Cir. 1977) (applying Texas law); 5
 
 Bender’s Uniform Commercial Code Service
 
 § 73.09 (1980).
 
 [4]
 
 Because NYTCO merely discharged a liability for which it, and not Covington, was liable under the receipts, there can be no subrogation.
 
 Pope and Company v. Union Warehouse Co.,
 
 195 Ala. 309, 70 So. 159, 160 (1915). Had NYTCO been a surety or guarantor under the receipts, it could have been subrogated to the rights of the creditor against the debtor,, see
 
 Lloyd Wood Construction Co. v. Con-Serv, Inc.,
 
 285 Ala. 409, 232 So.2d 649 (1970);
 
 City of Birmingham v. Trammell,
 
 267 Ala. 245, 101 So.2d 259 (1958) but such is not the case, however appealing the analogy to the guarantor situation.
 

 
 *1366
 
 Finding no abuse of discretion in the actions of the District Court, we affirm the denial of the petition.
 

 [1]
 

 . The loans and security were as follows:
 

 $84,000 secured by 15,000 bushels soybeans
 

 $67,200 secured by 12,000 bushels soybeans
 

 $22,400 secured by 8,000 bushels shelled yellow corn
 

 $90,000 secured by real estate
 

 [2]
 

 . In
 
 Covington Grain Company,
 
 No. 79-3726, we noted circumstances under which Bankruptcy Courts have recognized a transfer of interest. See
 
 In re Covington Grain Company Inc.
 
 v. Wiley
 
 Deal,
 
 638 F.2d 1357, 1360 n.2 (5th Cir. 1981).
 

 [3]
 

 . Ala. Code tit. 7 § 7 ^103. Obligation of warehouseman or carrier to deliver; excuse.
 

 (1) The bailee must deliver the goods to a person entitled under the document who complies with subsections (2) and (3), unless and to the extent that the bailee establishes any of the following:
 

 (a) Delivery of the goods to a person whose receipt was rightful as against the claimant;
 

 (b) Damage to or delay, loss or destruction of the goods for which the bailee is not liable;
 

 (c) Previous sale or other disposition of the goods in lawful enforcement of a lien or on
 

 warehouseman’s lawful termination of storage;
 

 (d) The exercise by a seller of his right to stop delivery pursuant to the provisions of the article on sales (section 7 2 705);
 

 (e) A diversion, reconsignment or other disposition pursuant to the provisions of this article (section 7 7 303) or tariff regulating such right;
 

 (f) Release, satisfaction or any other fact affording a personal defense against the claimant;
 

 (g) Any other lawful excuse.
 

 [4]
 

 .Under former Alabama law, failure to deliver the collateral upon proper demand established prima facie conversion.
 
 Cleveland Storage Co.
 
 v.
 
 Guardian Trust Co.,
 
 222 Ala. 210, 131 So. 634 (1930);
 
 Goodwyn v. Union Springs Gudno Co.,
 
 228 Ala. 173, 153 So. 246 (1934). The cases illustrate the primary, rather than secondary, nature of NYTCO’s liability to the Bank.