**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| R. W., individually and on behalf of his marital community, | No.21-35995 |
| | D.C. No. 4:18-cv-05089-RMP |
| *Plaintiff-Appellee,* | |
| v. | |
| COLUMBIA BASIN COLLEGE, a public institution of higher education; LEE THORNTON, in his individual capacity; RALPH REAGAN, in his official and individual capacities; REBEKAH WOODS, in her official capacity, | OPINION |
| *Defendants-Appellants.* | |

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted February 16, 2023
Seattle, Washington

Filed August 14, 2023

Before:  Richard A. Paez and Lawrence VanDyke, Circuit
Judges, and Roger T. Benitez,[*] District Judge.

Opinion by Judge Paez

## SUMMARY[**]

### Eleventh Amendment Immunity / Jurisdiction

On interlocutory appeal, the panel (1) affirmed the district court's order determining that plaintiff's suit for injunctive relief against Columbia Basin College officials in their official capacity could proceed under the *Ex parte Young* exception to Eleventh Amendment sovereign immunity; and (2) dismissed in part defendants' appeal for lack of jurisdiction in plaintiff R.W.'s action alleging First Amendment violations and other claims arising from his termination from a nursing program at Columbia Basin College.

Columbia Basin College officials terminated R.W. from the nursing program after learning that he had sought medical treatment for homicidal thoughts about three instructors.  R.W. filed suit seeking damages, reinstatement in the nursing program, and expungement of his failing grades.

---

[*] The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Determining that it had jurisdiction under the collateral order doctrine, the panel agreed with the district court that Columbia Basin College officials were subject to suit in their official capacities for prospective relief under the *Ex parte Young* exception to Eleventh Amendment sovereign immunity, which permits actions seeking prospective relief against officials for violation of federal law. The panel held that R.W.'s complaint alleged an ongoing violation of his constitutional rights given the uncertainty as to whether he could reenroll in the nursing program or qualify for financial aid; his claim for prospective relief was not moot; and the Dean of Student Conduct was a proper defendant because he was directly involved with the alleged constitutional violations and there was a question of fact as to whether he had authority to implement injunctive relief if so ordered.

The panel held that it lacked jurisdiction to review the district court's order declining to reconsider its prior partial summary judgment for R.W. on his 42 U.S.C. § 1983 claim for violation of the First Amendment. The merits of R.W.'s First Amendment claim were severable from, and neither necessary to nor necessarily resolved by, the district court's ruling on the *Ex parte Young* issue, and were reviewable upon entry of final judgment.

The panel also held that it lacked jurisdiction to review the district court's order substituting the current CBC president for the former president, who had resigned prior to the commencement of litigation. Interlocutory orders granting party substitution under Fed. R. Civ. P. 25 are not subject to immediate review under the collateral order doctrine, and the court's jurisdiction to review the application of *Ex Party Young* did not extend to permit interlocutory review of the order.

## COUNSEL

Jacob E. Brooks (argued) and Carl P. Warring, Assistant Attorneys General; Robert W. Ferguson, Attorney General; Attorney General's Office, Spokane, Washington; for Defendant-Appellant.

Bret J. Uhrich (argued) and Eric B. Eisinger, Walker Heye PLLC, Richland, Washington, for Plaintiff-Appellee.

## OPINION

PAEZ, Circuit Judge:

R.W., a nursing student at Columbia Basin College (CBC), sought medical treatment for homicidal thoughts about three of his instructors in March 2017. His doctor contacted mental health crisis responders, who sent a social worker to evaluate him at the doctor's office. R.W. voluntarily admitted himself to inpatient psychiatric treatment the same afternoon and remained there for four nights. The social worker, perceiving an automatic duty to warn, reported R.W.'s statements to the local police. When the report reached CBC, college officials terminated R.W. from the nursing program, barred him from campus, and entered failing grades for his in-progress coursework.

In May 2018, R.W. filed suit against CBC as well as CBC President Lee Thornton and CBC Dean of Student Conduct Ralph Reagan (together, "CBC officials") seeking damages and injunctive relief. He alleged violations of his First Amendment rights and other claims related to mental health discrimination. The district court entered partial

summary judgment in favor of R.W. on his First Amendment claim and rejected the CBC officials' claim of qualified immunity. The officials appealed the denial of qualified immunity, and we reversed, holding that they were entitled to qualified immunity because the constitutional right at issue in R.W.'s case was not clearly established at the time of the violation. *R.W. v. Columbia Basin Coll.*, 842 F. App'x 153, 154 (9th Cir. 2021). We remanded the case for further proceedings.

On remand, R.W. continued to pursue injunctive relief against CBC and the officials, seeking reinstatement in the nursing program and expungement of failing grades from the winter 2017 quarter. The defendants again moved for summary judgment, which the district court granted in part and denied in part. *R.W. v. Columbia Basin Coll.*, 572 F. Supp. 3d 1010 (E.D. Wash. 2021). The district court determined that CBC was immune from suit under the Eleventh Amendment and dismissed it from the case. It held, however, that the *Ex parte Young*[1] doctrine permitted R.W. to pursue his claim for injunctive relief, which remained live, against the CBC officials in their official capacities. It also declined to revisit its grant of summary judgment on liability. In this interlocutory appeal, CBC officials raise various challenges to the district court's ruling.

We hold that the district court correctly applied the *Ex parte Young* doctrine allowing R.W.'s suit to proceed against the CBC officials and that the case is not moot. We lack jurisdiction to review the district court's order declining to reconsider its partial summary judgment ruling on liability or its order substituting the current CBC president as a

---

[1] 209 U.S. 123 (1908).

defendant.

# I.

In spring 2017, R.W. was one quarter away from completing the nursing program at CBC. He had taken medical leave from CBC during the fall 2016 quarter. By February 2017, his medical conditions had worsened, and he had begun to have intrusive violent thoughts.

On February 28, 2017, R.W. called his primary care doctor's office to report his concerns and schedule an appointment. R.W. attended classes at CBC between February 28 and his March 6 appointment without mentioning his violent thoughts to anyone else. During the March 6 appointment, R.W. told his doctor that school made him feel anxious and overwhelmed and that he had been struggling to sleep. R.W. also told the doctor that he had intrusive, disturbing thoughts and visions of killing his instructors.

The doctor contacted Lourdes Hospital's Crisis Response Counseling Center to conduct a mental health evaluation. The Center dispatched a social worker to evaluate R.W. at the doctor's office. R.W. told the social worker about his homicidal thoughts toward three specific instructors. R.W. agreed to voluntarily admit himself for inpatient psychiatric treatment that afternoon. He spent four nights in an inpatient facility. Counselors who discharged him on March 10 concluded that he was not a threat to others.

Because R.W. had disclosed homicidal thoughts, the social worker believed she had a duty to warn law enforcement authorities. She reported R.W.'s statements to the local police department, telling the officer that "in her opinion the threats did not appear to be serious and that

[R.W.] seemed very remorseful for his thoughts." On the morning of March 7, the police notified CBC's campus security. Campus security then informed Kim Tucker—the dean of the nursing program and one of the instructors about whom R.W. had reported thoughts—as well as Dean of Student Conduct Ralph Reagan.

Upon receiving this information on March 7, Reagan issued an interim notice to R.W. that barred him from CBC's campus pending an investigation into his alleged conduct. Tucker issued a "Nursing Student Discontinuation Form," effective March 7, 2017, which terminated R.W. from the nursing program based on "incomplete winter quarter trespassed [barred] from campus." On March 8, Reagan also issued a second letter to R.W. regarding initiation of the student conduct process.

R.W. appealed the interim restriction, and the Student Appeals Board upheld it days later. R.W. then appealed the Student Appeals Board's decision to CBC President Lee Thornton. On review, Thornton modified the interim restriction by lifting the order barring R.W. from the Pasco campus (where no nursing courses are taught) but requiring R.W. to coordinate any need to be on the Richland campus (the site of the nursing program) with Reagan.

In April, after meeting with R.W. and reviewing his medical records, Reagan issued a sanction letter finding R.W. responsible for violating CBC's policy on Abusive Conduct. This policy, contained in Wash. Admin. Code § 132S-100-205, prohibits:

> Physical and/or verbal abuse, threats, intimidation, harassment, online harassment, coercion, bullying, cyberbullying, retaliation,

> stalking, cyberstalking, and/or other conduct which threatens or endangers the health or safety of any person or which has the purpose or effect of creating a hostile or intimidating environment.

Specifically, Reagan determined that R.W. had committed "other conduct" that had the "effect of creating a hostile or intimidating environment." When deposed, Reagan testified that the "conduct" at issue was R.W.'s "thoughts and ideation" and "him reporting it." It is undisputed that R.W. did not engage in any physical or verbal abuse, threats, intimidation, or harassment.

R.W. again appealed to the Student Appeals Board requesting review of the misconduct finding. The Student Appeals Board affirmed the finding, and R.W. appealed to the CBC president. In June 2017, Thornton upheld the finding of misconduct under Wash. Admin. Code § 132S-100-415(5)(c)(iii) and the related sanctions.

On May 25, 2018, R.W. filed suit against CBC, Thornton, and Reagan. R.W. alleged a 42 U.S.C. § 1983 claim for violation of the First Amendment as well as other claims related to mental health discrimination.[2] He sought injunctive relief, nominal and compensatory damages, attorneys' fees, and any other just and equitable relief.

---

[2] R.W.'s statutory claims alleging that CBC and its officials discriminated against him on the basis of mental health disability proceeded to a jury trial in August 2022. The jury returned a verdict for defendants. ECF No. 250, *R.W. v. Columbia Basin College*, No. 4:18-cv-05089-MKD (E.D. Wash. Aug. 9, 2022). In addition, R.W. alleged a § 1983 claim for violation of the Equal Protection Clause, which he has since abandoned.

In June 2019, the parties filed cross motions for partial summary judgment. The district court denied qualified immunity to the CBC officials, granted partial summary judgment for R.W. as to liability on the First Amendment § 1983 claim, and denied the parties' competing motions for summary judgment related to the statutory disability discrimination claims. As to liability, the district court concluded that the sanctions CBC imposed on R.W. in response to statements made to his doctor to obtain medical assistance violated R.W.'s First Amendment right to free speech.

CBC officials appealed the denial of qualified immunity. In March 2021, we reversed the district court's decision, holding that the officials were entitled to qualified immunity because the constitutional right at issue was not clearly established at the time of the violation. *R.W.*, 842 F. App'x at 154. Our decision did not address the merits of R.W.'s First Amendment claim. *Id.*

On remand, R.W. pursued his remaining claim for injunctive relief, seeking reinstatement in the nursing program and expungement of his failing grades from the winter 2017 quarter. In a new motion for summary judgment, CBC and the defendant officials invoked Eleventh Amendment sovereign immunity and asked the district court to reconsider its prior grant of summary judgment regarding liability. They argued that the Supreme Court's intervening decision in *Mahanoy Area School District v. B.L. ex rel. Levy*, 141 S. Ct. 2038 (2021), required the district court to analyze R.W.'s case under the *Tinker* doctrine, *see Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969).

In November 2021, the district court granted in part and denied in part the defendants' motion. The district court held that CBC was immune from suit and dismissed it from the case but that the *Ex parte Young* doctrine permitted R.W. to pursue injunctive relief against the defendant officials in their official capacities. The court also declined to disturb its grant of summary judgment on liability, concluding that *Mahanoy* did not apply.

In this interlocutory appeal, CBC officials raise various challenges to the district court's ruling that *Ex parte Young* applies to R.W.'s claim, including that the case is moot. We hold that the district court correctly applied the *Ex parte Young* exception to this case and that a live controversy remains. Furthermore, although the officials characterize their appellate arguments as pertaining only to the applicability of *Ex parte Young*, they advance arguments that call for us to review the district court's refusal to reconsider its grant of partial summary judgment and its substitution of current CBC President Rebekah Woods as a proper defendant in place of Thornton. These issues are distinct from *Ex parte Young*, and we hold that we lack jurisdiction to consider them on an interlocutory basis.

## II.

CBC officials seek review of the denial of their Eleventh Amendment immunity under the *Ex parte Young* exception. *See Ex parte Young*, 209 U.S. 123 (1908). In *Ex parte Young*, the Court held that the Eleventh Amendment does not bar an action seeking prospective relief against a state official for a violation of federal law. *See* 209 U.S. at 159–60. Because a state officer who violates federal law acts outside the scope of her authority, she is "not the State for sovereign-immunity purposes" and is subject to a federal

court's injunctive power.  *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011).  Nonetheless, an action brought under *Ex parte Young* "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The doctrine thus rests on a well-known paradox: "unconstitutional conduct by a state officer may be 'state action' for purposes of the Fourteenth Amendment yet not attributable to the State for purposes of the Eleventh." *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 685 (1982) (citation omitted).

The collateral order doctrine gives us jurisdiction over this interlocutory appeal.  *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).[3]  This doctrine permits appellate review of a "small class" of district court orders that do not resolve an entire case.  *Id.* at 546.  An order may belong to this class if it satisfies three requirements derived from the Court's *Cohen* decision: it "must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotation omitted).  The doctrine is "best

---

[3] R.W. argues that the collateral order doctrine does not apply in this case, but we repeatedly have invoked it to review a district court's application of *Ex parte Young*.  *See, e.g.*, *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 & n.6 (9th Cir. 2003); *In re Ellett*, 254 F.3d 1135, 1138 & n.1 (9th Cir. 2001); *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 n.2, 1184–85 (9th Cir. 1997); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 n.21 (1998) ("If the official seeks summary judgment on immunity grounds and the court denies the motion, the official can take an immediate interlocutory appeal, even if she has already so appealed a prior order.").

understood not as an exception to the final decision rule laid down by Congress in [28 U.S.C.] § 1291, but as a practical construction of it." *Id.* at 349. We strictly observe the limits on this narrow category of orders to preserve "the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)).

Although the collateral order doctrine allows us to review the application of *Ex parte Young*, CBC officials raise other issues that exceed the scope of that inquiry. Mindful of our "special obligation to satisfy" ourselves of our subject-matter jurisdiction, we examine whether we may consider their arguments that the district court erred in its refusal to reconsider its ruling on liability or in its party substitution order. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998); *accord In re Martinez*, 721 F.2d 262, 264 (9th Cir. 1983) (holding that federal courts have both the inherent authority and the responsibility to consider their own jurisdiction). We hold that we lack jurisdiction to decide these ancillary issues.

## A.

For a suit to proceed under *Ex parte Young*, the plaintiff must allege—not prove—an ongoing violation of federal law for which she seeks prospective injunctive relief. *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019). The CBC officials ignore this narrow inquiry and characterize the merits of R.W.'s First Amendment claim as part of the *Ex parte Young* analysis. They argue that *Ex parte Young* should not apply because R.W.'s statements were a true threat rather than protected speech and because the CBC

officials' actions were constitutional under the *Tinker* doctrine. These arguments amount to an interlocutory appeal of the district court's refusal to reconsider its previous summary judgment ruling that defendants violated the First Amendment.

The collateral order doctrine does not permit interlocutory review of the district court's refusal to reconsider a partial grant of summary judgment, whether as part of the *Ex parte Young* inquiry or independently under the collateral order doctrine.

This case is not the first in which we have rejected an appellant's attempt to obtain review of interlocutory rulings on liability defenses by associating them with an issue that is reviewable under the collateral order doctrine. In *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189–91 (9th Cir. 2003), we held that although the collateral order doctrine provided jurisdiction to review the application of *Ex parte Young*, that jurisdiction did not encompass review of the denial of the state's motion to dismiss the underlying § 1983 claims. The state argued that sovereign immunity was either "implicated" or "inextricably intertwined with the § 1983 claims," providing us with jurisdiction. *Miranda B.*, 328 F.3d at 1190. We rejected both arguments. We first explained that there was no direct implication because "the 'essence' of the State's argument [was] not immunity from suit or a right not to stand trial, but a defense to suit." *Id.* (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988) (stating that "'the essence' of the claimed right [must be] a right not to stand trial") (citation omitted)). We then concluded that neither was sovereign immunity "inextricably intertwined" with the merits of the § 1983 claims; rather, the state's appeal of the application of *Ex*

*parte Young* was "completely separable and distinct from the merits of [] Miranda B.'s § 1983 claim."  *Id.*

A decade later, we applied the same reasoning when we dismissed the interlocutory appeal in *Nunag-Tanedo v. East Baton Rouge Parish School Board*, 711 F.3d 1136, 1140 (9th Cir. 2013), for lack of jurisdiction.  In that case, the collateral order doctrine did not permit review of the district court's denial of *Noerr-Pennington* immunity, which was "a merits defense to liability, premised on an implied limitation as to the reach of the applicable law," *id.* at 1139, that was "no more a protection from litigation itself than is any other ordinary defense, affirmative or otherwise and constitutionally grounded or not," *id.* at 1140.  The question of liability was thus "part and parcel of the merits of the plaintiffs' action" and reviewable upon final judgment.  *Id.* at 1139.

Finally, we addressed an analogous issue in *SolarCity Corp. v. Salt River Project Agricultural Improvement & Power District*, 859 F.3d 720 (9th Cir. 2017).   In this antitrust case, the Power District sought interlocutory review of the denial of its motion to dismiss, in which it had asserted immunity under the state action doctrine.  Applying *Nunag-Tanedo*, 711 F.3d at 1140, we held that the state action doctrine "is a defense to liability, not immunity from suit" and thus is not appealable under the collateral order doctrine. *SolarCity Corp.*, 859 F.3d at 726–27.  In reaching this result, we heeded the Supreme Court's emphasis on the narrow scope of the collateral order doctrine.  *Id.* at 725 (noting the Supreme Court's "admonition that the collateral-order doctrine is a narrow exception . . . that must be strictly applied" (internal quotation marks and citations omitted)). Indeed, the Supreme Court has directed that when we evaluate the requirements of the collateral order doctrine, we

must "consider 'the entire category to which a claim belongs.'" *Id.* at 724 (quoting *Digit. Equip.*, 511 U.S. at 868); *accord Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092, 1095–96 (9th Cir. 2022). "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, 'the chance that the litigation at hand might be speeded, or a particular injustice averted,' does not provide a basis for jurisdiction under § 1291." *SolarCity Corp.*, 859 F.3d at 724 (quoting *Mohawk Indus., Inc.*, 558 U.S. at 107 (alterations and internal citations omitted)).

These cases demonstrate our careful application of the *Cohen* test, under which the collateral order doctrine applies exclusively to issues on interlocutory appeal that are "completely separate from the merits" and effectively unreviewable if the case proceeds to final judgment. *Will*, 546 U.S. at 349. *Ex parte Young* requires only allegations of a constitutional violation and a request for prospective injunctive relief to restrict state officials from asserting immunity from suit in their official capacities. The merits of R.W.'s First Amendment claim are thus "severable from, and neither necessary to nor necessarily resolved by," the court's ruling on the *Ex parte Young* issue. *Nunag-Tanedo*, 711 F.3d at 1141. The district court's partial grant of summary judgment regarding liability can be reviewable upon entry of final judgment. *See id.* at 1139.

We thus cabin our interlocutory review to whether R.W.'s complaint alleged an ongoing constitutional violation for which he sought prospective injunctive relief. We dismiss for lack of jurisdiction the CBC officials' claim that the district court erred in refusing to reconsider its prior ruling that they violated R.W.'s First Amendment rights.

B.

The CBC officials also take umbrage with the district court's substitution of current CBC President Rebekah Woods for Lee Thornton, the former president who resigned prior to the commencement of the litigation. Like the issue of liability, party substitution under Federal Rule of Civil Procedure 25 falls outside the *Ex parte Young* analysis.

Woods's argument that substituting her for Thornton deprives her of Eleventh Amendment immunity lacks merit. Updating the name of a party sued in an official capacity to reflect the present occupant of that office is irrelevant to the officeholder's immunity from suit. We treat a claim against a government officer in her official capacity as a claim against the employing entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (explaining that an official-capacity suit "is *not* a suit against the official personally, for the real party in interest is the entity"); *see also In re Ellett*, 254 F.3d at 1138 ("The Court has recognized that the *Ex Parte Young* doctrine is based upon the 'fiction' that a state officer who violates federal law in his official capacity, pursuant to his authority under state law, is nonetheless not a state agent for sovereign immunity purposes." (quoting *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 269–70 (1997))).

An official-capacity suit for injunctive relief is properly brought against persons who "would be responsible for implementing any injunctive relief." *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012); *accord Colwell v. Bannister*, 763 F.3d 1060, 1070–71 (9th Cir. 2014). To determine whether official immunity applies, we ask whether the CBC president—notwithstanding the identity of the person performing that role at any given time—can implement

injunctive relief to remedy the alleged ongoing violation of federal law.

The district court substituted the current CBC president, in her official capacity, for the former one as a procedural matter. Although Thornton resigned before R.W. filed suit, the logic behind updating the name of the current occupant of an official position nonetheless applies. *See* Fed. R. Civ. P. 25(d) ("[A]ny misnomer not affecting the parties' substantial rights must be disregarded."); 6 James Wm. Moore et al., Moore's Federal Practice—Civil § 25.40 (Matthew Bender 3d ed. 2021); *see also Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 31 (1st Cir. 1988) (explaining that when "the action is brought against a public officer in his official capacity, the manipulation of names is merely a technicality that should not interfere with substantial rights" (internal citations omitted)). Because R.W. seeks injunctive relief against Woods in her official capacity as CBC president, her substitution for Thornton is external to the *Ex parte Young* analysis. Our jurisdiction to review the application of *Ex parte Young* therefore does not extend to permit interlocutory review of the district court's Rule 25 substitution order.

We next examine whether the collateral order doctrine provides jurisdiction to review this class of orders independent from the *Ex parte Young* analysis. We have observed that orders granting and denying Rule 25 party substitution pose distinct questions of reviewability, but our past cases have not required us to decide whether we have jurisdiction to review an interlocutory order granting substitution. *See Virtue Glob. Holdings Ltd. v. Rearden LLC*, 2016 WL 4259213, at *3 (N.D. Cal. Aug. 11, 2016) (citing *In re USA Com. Mortg. Co.*, 397 F. App'x 300, 304 (9th Cir. 2010)). We now hold that interlocutory orders

granting Rule 25 party substitution are not subject to immediate review under the collateral order doctrine.

To warrant review under the collateral order doctrine, an interlocutory order must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [be] effectively unreviewable on appeal from a final judgment." *Pelletier v. Fed. Home Loan Bank of S. F.*, 968 F.2d 865, 873 (9th Cir. 1992) (internal citations and quotation marks omitted). The order must meet all three requirements. *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1140 (9th Cir. 2007). Because an order substituting a party under Rule 25 fails to satisfy the third prong, we need not discuss the other two requirements. *Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 498 (1989) (explaining that when the order in question "fail[s] to satisfy the third requirement of the collateral order test," "we need not decide whether [the] order" meets the other prongs); *see also Mohawk Indus., Inc.*, 558 U.S. at 108.

An order satisfies the third prong of the *Cohen* test only if it "involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (internal quotation marks omitted). "That a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment has never sufficed." *Mohawk Indus., Inc.*, 558 U.S. at 107 (internal quotation marks and ellipses omitted).

Party substitution under Rule 25 allows an action to continue unabated when a party's death, incompetency, transfer of interest, or the replacement of a public official causes an interest in the lawsuit to change hands. *See* Fed.

R. Civ. P. 25. Where substitution does not automatically occur, whether to allow it is committed to the district court's discretion and is appropriate when it will "facilitate the conduct of the litigation." *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) (describing the operation of Rule 25(c)). In the past, we have "assum[ed], without deciding" that an order *denying* a motion for substitution is appealable. *Dodd v. Pioche Mines Consol., Inc.*, 308 F.2d 673, 674 (9th Cir. 1962) (per curiam). Indeed, some of our sister circuits have entertained appeals from orders denying party substitution when that denial ended the litigation. *See, e.g.*, *Billino v. Citibank, N.A.*, 123 F.3d 723, 727 (2d Cir. 1997) ("[B]ecause the denial of the motion to substitute caused the dismissal of the action [since there was no party able to carry on the action], an appeal by [the party] would be from a final order."); *see also In re Covington Grain Co., Inc.*, 638 F.2d 1357, 1360 (5th Cir. Unit B Mar. 1981).

In contrast to an order denying substitution, an order granting party substitution lacks this functional finality and is reviewable upon final judgment. *See, e.g.*, *Ashmore v. CGI Grp., Inc.*, 860 F.3d 80 (2d Cir. 2017) (holding that the district court's interlocutory orders dismissing the plaintiff and substituting another party in his stead were not immediately appealable under the collateral order doctrine and dismissing the appeal for lack of jurisdiction); *Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322, 1325 (10th Cir. 1978) (holding that the district court's interlocutory Rule 25 order was reviewable on final judgment and thus "non-appealable," consistent with authority that "generally held that an order granting substitution of a party or adding an additional party is interlocutory").

Additional persuasive authority supports our determination that party substitution orders are not subject

to immediate review because they are reviewable upon entry of final judgment. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1962 (3d ed. 2007) (collecting cases from the First, Third, Fourth, Fifth, and Tenth Circuits to show that "[a]n order allowing substitution under Rule 25 is interlocutory and not appealable of right" and "[t]he propriety of the substitution can be raised on appeal from a final judgment"); *see also* 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3914.18 (2d ed. 1992) (observing that "[o]rdinarily orders granting or denying substitution are not final" but that in some cases, the denial of substitution might satisfy the collateral order doctrine).

We agree with these sources and hold that that an interlocutory order granting Rule 25 party substitution is not appealable under the collateral order doctrine. We therefore lack jurisdiction to review the district court's substitution of Woods for Thornton, and we dismiss this portion of the appeal.

## III.

Having established the bounds of our jurisdiction, we turn to whether the district court correctly determined that R.W.'s action for injunctive relief could proceed against defendants Reagan and Woods in their official capacities under the *Ex parte Young* exception to sovereign immunity. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"

*Koala*, 931 F.3d at 895 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

We agree with the district court that R.W.'s complaint meets these criteria.[4]

Defendants Reagan and Woods contend that R.W. failed to allege an ongoing constitutional violation, that the case is moot, and that Reagan is not a proper defendant because he lacks authority to implement the relief that R.W. seeks. After considering these arguments, we conclude that the district court correctly determined that R.W. alleged an ongoing constitutional violation, that his claim for prospective injunctive relief remains live, and that Reagan is subject to suit under *Ex parte Young*.

A.

The CBC officials contend that the district court failed to recognize a distinction between an ongoing violation and ongoing harm from a past violation. Their proffered authority for this proposition consists of unpublished, out-of-circuit cases involving discrete or time-limited punishments, such as the issuance of a single letter grade or a two-year expulsion period. *See Nicholl v. Attorney Gen. Ga.*, 769 F. App'x 813 (11th Cir. 2019); *McLaughlin v. Fla. Int'l Univ. Bd. of Trustees*, 533 F. Supp. 3d 1149 (S.D. Fla. 2021), *aff'd*, No. 21-11453, 2022 WL 1203080 (11th Cir.

---

[4] R.W.'s complaint seeks prospective relief against CBC officials in their official capacities under *Ex parte Young* "to enjoin their violations of [his] rights under the First Amendment . . . " and requests an injunction "lifting the [no] trespass order related to R.W., enjoining CBC from requiring R.W. to retake all courses to complete his degree, and preventing CBC from requiring [R.W.] to obtain medical care and make regular reports of his medical treatment as a condition of re-enrollment," as well as "all other relief the court deems just and equitable."

Apr. 22, 2022). In contrast, R.W. was barred from campus indefinitely, removed from his program of study, and subjected to conditions on his potential return that had no stated end date. The district court correctly observed that R.W.'s ability to seek or obtain reenrollment at CBC remains uncertain, as does his ability to qualify for financial aid. On this record, R.W. has alleged an ongoing violation of his constitutional rights as *Ex parte Young* requires.

## B.

The CBC officials also assert that R.W.'s claim for injunctive relief has become moot since the commencement of this lawsuit because the sanctions expired at some point after R.W. did not attempt to reenroll under their terms in winter 2018. The officials represent that R.W. is now "free to seek reenrollment in the nursing program without regard to the prior decisions."

The voluntary cessation of challenged conduct moots a case "only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (internal quotation omitted). "The party asserting mootness bears a 'heavy burden.'" *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (citation omitted).

The district court correctly found that CBC officials did not meet the high standard to establish mootness. It based this determination on two main points in the record. First, the contents and timing of CBC's communications regarding sanctions undermine its current assertion that they will not be reinstituted. Nothing in the April 2017 letter imposing the sanctions suggested that they were time-limited. Indeed, the letter specified that R.W. would be barred from the Richland campus until he reenrolled in a CBC program

requiring his presence there. Reagan also testified in his 2019 deposition that R.W. would need to agree to comply with the sanctions before he could return to CBC. Reagan's testimony shows that the sanctions remained in place after winter 2018.

The district court highlighted factual similarities between R.W.'s case and *DeJohn v. Temple University*, 537 F.3d 301, 309 (3d Cir. 2008), in which the Third Circuit held that the university's voluntary cessation of its original policy did not moot plaintiff's claim because the university's decision to defend the need for an unconstitutional policy raised a "reasonable expectation" that it would reimplement it. The court also noted the strategic timing of Reagan's July 2021 letter, which was sent after more than three years of litigation but only one month before defendants filed their motion for summary judgment alleging mootness.

Second, Reagan and Thornton insist that they are unable to engage in the same behavior, despite defending its constitutionality, due to changes in Reagan's responsibilities and Thornton's resignation. The district court noted that the CBC officials cite no authority stating that the focus for the voluntary cessation inquiry should be on the individual actors' subsequent authority rather than the allegedly unlawful conduct. It also viewed the intervening changes to CBC's process for issuing sanctions as leaving open the possibility that Reagan may regain his authority to impose sanctions.

On this record, the district court correctly determined that the sanctions against R.W. remained in force until the issuance of the July 2021 letter and that the CBC officials had not carried their burden. The officials have not shown

that they are unlikely to reinstitute sanctions against R.W. absent court intervention.

In addition to injunctive relief preventing the CBC officials from enforcing the original or equivalent sanctions, prospective injunctive relief in the form of R.W.'s reinstatement to the nursing program and the expungement of negative information from his academic record remains available. We have held that reinstatement is a form of prospective injunctive relief. *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 840 (9th Cir. 1997). The CBC officials contest this conclusion because *Doe* dealt with the employment context and because they maintain that R.W. was not officially suspended or expelled. These arguments are unpersuasive. We see no reason to limit *Doe* to the employment context. In addition, the record shows that CBC officials removed R.W. from the nursing program and barred him from campus due to his statements and that his path to return remains uncertain. The officials have thus effectively expelled R.W. from the nursing program regardless of their chosen terminology.

Furthermore, the district court correctly determined that a triable issue of fact exists regarding whether R.W. could have passed his courses if CBC officials had not barred him from campus. That dispute precludes summary judgment on the issue of whether R.W. could receive expungement of his failing grades. The potential for the court to order R.W.'s reinstatement and the expungement of his failing grades is thus an additional, independent basis for the conclusion that R.W.'s *Ex parte Young* claim remains live.

## C.

The district court correctly determined that Reagan is a proper defendant under *Ex parte Young* because genuine

issues of material fact remain regarding his authority to order the relief that R.W. seeks.  Appellants frame this issue as part of the *Ex parte Young* analysis because an official must have the authority to implement injunctive relief for *Ex parte Young* to apply.

For a suit to proceed under *Ex parte Young*, a plaintiff must show that an injunction against a particular official "would 'significant[ly] increase' the likelihood" of relief, not that relief "is a 'guarantee.'" *Mecinas v. Hobbs*, 30 F.4th 890, 900 (9th Cir. 2022) (quoting *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012)); *accord id.* at 903–04 ("The 'connection' required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" (citation omitted)); *see also Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (holding that university official had a "fairly direct" connection to enforcing university policies).  Neither our caselaw nor the out-of-circuit cases on which the CBC officials rely[5] requires a higher showing of

---

[5] In each case that CBC officials cite, the relevant official's authority to implement relief was precluded as a matter of law or based on the undisputed factual record.  *See Boglin v. Bd. of Trs. of Ala. Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1265 (N.D. Ala. 2018) (ruling that the Board of Trustees could not grant reinstatement because a state statute reserved power over hiring decisions to the university president); *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (allowing case to proceed solely against university president after ruling that terminated professor's suit against fifteen individual defendants "cast [plaintiff's] claims too broadly for *Ex parte Young*"); *El-Ghori v. Grimes*, 23 F. Supp. 2d 1259, 1266–67 (D. Kan. 1998) (ruling that the record showed that only the Kansas Board of Regents, not the university president, could reinstate a professorship and

the official's ability to grant relief before a suit can proceed under *Ex parte Young*. For example, *Ashokkumar v. Elbaum*, 932 F. Supp. 2d 996, 1010 (D. Neb. 2013), undermines their argument, explaining that "*Ex Parte Young* does not require that a defendant have full power to redress a plaintiff's injury; rather, it simply requires that the defendant have some connection with the challenged actions," *id.* (internal quotation omitted).

Reagan was directly involved with the alleged constitutional violation: he issued the no-trespass order against R.W., initiated and conducted the student conduct investigation that resulted in sanctions, and purported to have lifted the sanctions when R.W. did not apply for readmission. This record reflects contemporaneous authority over R.W.'s presence on campus and enrollment at CBC that satisfies the minimal connection required for *Ex parte Young*. CBC officials contend that CBC has since circumscribed the role of the Dean of Student Conduct. The district court therefore rightly identified a material issue of fact as to the current scope of Reagan's authority. Because neither the law nor the existing factual record precludes Reagan's authority to implement R.W.'s requested

---

grant tenure); *Campbell v. City of Waterbury*, 585 F. Supp. 3d 194, 203 (D. Conn. 2022) (ruling that a plaintiff who sued a prosecutor and court clerk after police seized her car had alleged no facts to suggest that defendants had custody of her car or the power to order its release); *Randolph v. Rodgers*, 253 F.3d 342, 346 (8th Cir. 2001) (holding that case was moot as to lower-level prison officials, against whom an injunction would have no effect because inmate had been transferred to a different facility, but allowing the case to proceed against the higher-level official who had authority over the whole prison system); *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98–99 (2d Cir. 2002) (considering individual defendants' legal power and duty to control assessment of taxes alleged to violate federal law).

injunctive relief if the district court were to order it, the district court correctly allowed the suit to proceed against him.

**AFFIRMED in part; DISMISSED in part.**  Appellee shall recover his costs on appeal.