**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LENA CHILDS, an individual;
DONALD CHILDS, an individual; T.
CHILDS, a minor by and through her
guardian ad litem, Lena Childs; A.
CHILDS, a minor by and through her
guardian ad litem, Lena Childs,
*Plaintiffs-Appellees*,

v.

SAN DIEGO FAMILY HOUSING LLC, a
California Limited Liability
Corporation; LINCOLN MILITARY
PROPERTY MANAGEMENT, LP, a
Delaware Limited Partnership,
*Defendants-Appellants*,

and

INDEPTH CORPORATION, a California
Corporation; DOES, 1 through 25
inclusive,
*Defendants.*

No. 20-56049

D.C. No.
3:19-cv-02329-
JM-MDD

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted August 31, 2021
Pasadena, California

Filed January 14, 2022

Before:  Sandra S. Ikuta, Mark J. Bennett, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### Appellate Jurisdiction

The panel dismissed, for lack of appellate jurisdiction, defendants' appeal from the district court's order denying their claim of derivative sovereign immunity in a tort suit concerning military housing.

The panel held that the district court's order was not immediately appealable under the collateral order doctrine, under which an order that does not terminate the litigation is nonetheless treated as final if it (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

effectively unreviewable on appeal from a final judgment. Joining the Fifth Circuit, the panel held that the first two prongs were satisfied, but the denial of derivative sovereign immunity was not effectively unreviewable on appeal from a final judgment because denying an immediate appeal would not imperil a substantial public interest. The panel held that the public interest underlying derivative sovereign immunity is extending the federal government's immunity from liability, in narrow circumstances, to government agents carrying out the federal government's directions, and this interest could be vindicated after trial. The panel concluded that *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), did not undercut Ninth Circuit case law holding that federal sovereign immunity and government contractor immunity protect defendants from liability, rather than providing immunity from suit.

---

## COUNSEL

Don Willenburg (argued), Gordon & Rees Scully Mansukhani LLP, Oakland, California; Kristin N. Reyna Dehart and Matthew P. Nugent, Gordon & Rees Scully Mansukhani LLP, San Diego, California; for Defendants-Appellants.

Martin Nebrida Buchanan (argued), Law Offices of Martin N. Buchanan, San Diego, California; Robert J. Fitzpatrick, Fitzpatrick Law APC, San Diego, California, for Plaintiffs-Appellees.

Daniel Winik (argued) and H. Thomas Byron III, Appellate Staff; Randy S. Grossman, Acting United States Attorney; Brian M. Boynton, Acting Assistant Attorney General; United States Department of Justice, Civil Division, Washington, D.C.; for Amicus Curiae United States of America.

## OPINION

IKUTA, Circuit Judge:

In this appeal, defendants claim they have derivative sovereign immunity under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), and therefore the district court should have granted their motion to dismiss. We hold that a district court order denying a claim of derivative sovereign immunity is not immediately appealable under the collateral order doctrine, *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949), and therefore dismiss the appeal for lack of appellate jurisdiction.

I

Donald Childs and his family leased a house in military family housing at Naval Amphibious Base Coronado near San Diego while Childs was on active duty in the Navy. The military housing was owned by San Diego Family Housing, LLC, (SDFH), a public-private venture created by statute, in which the United States Navy is a minority LLC member. SDFH contracted with Lincoln Military Property Management, L.P., (Lincoln) to provide property management services.

Soon after moving in, the Childs family reported a series of water-intrusion and mold problems in their home to SDFH and Lincoln.  SDFH, Lincoln, and InDepth, a mold remediation company retained by Lincoln, were unable to resolve the problem to the Childs family's satisfaction.  The Childs family brought suit in California state court alleging negligence and other state tort claims.  SDFH and Lincoln removed the case to federal court based on federal enclave jurisdiction and other theories.

Once in federal court, SDFH and Lincoln moved to dismiss the complaint for lack of subject-matter jurisdiction.[1] SDFH and Lincoln asserted they were government contractors acting at the direction of the federal government, and therefore had derivative sovereign immunity.  *See Yearsley*, 309 U.S. at 22.  The Childs family opposed the motion.  So did the United States, which filed a statement of interest in the case with the permission of the district court.

The district court held that SDFH and Lincoln were not entitled to derivative sovereign immunity under *Yearsley* and denied the motion to dismiss.  SDFH and Lincoln appealed the order.  The court entered a partial stay of proceedings pending resolution of the appeal.

---

[1] Rule 12(b)(1) of the Federal Rules of Civil Procedure provides: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

## II

The question before us is whether we have appellate jurisdiction under 28 U.S.C. § 1291 to hear the appeal of the dismissal order. "[W]e have jurisdiction to determine whether we have jurisdiction to hear the case." *Atl. Nat'l Tr. LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 933 (9th Cir. 2010) (quoting *Aguon-Schulte v. Guam Election Comm'n*, 469 F.3d 1236, 1239 (9th Cir. 2006)).

## A

We "have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. This means "that a party may not take an appeal under this section until there has been a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (cleaned up). Under the Supreme Court's collateral order doctrine, however, the term "final decisions" in § 1291 also includes "a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (cleaned up). The Supreme Court has emphasized that this doctrine is narrow, because otherwise the doctrine could "overpower the substantial finality interests § 1291 is meant to further," including judicial efficiency. *Will v. Hallock*, 546 U.S. 345, 350 (2006).

To fall within the narrow class of orders satisfying the Supreme Court's collateral order doctrine, an order must (1) "conclusively determine the disputed question,"

(2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Id.* at 349 (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).[2]  When the Court determines that a type of order is immediately appealable, that ruling is applicable to all orders in that category. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) ("In fashioning a rule of appealability under § 1291, however, we look to categories of cases, not to particular injustices."); *see also Carroll v. United States*, 354 U.S. 394, 405 (1957) ("Appeal rights cannot depend on the facts of a particular case.").

Some categories of orders denying dismissal on the ground of immunity from suit are immediately appealable under the collateral order doctrine.  This includes orders denying motions to dismiss on the grounds of absolute immunity, *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43 (1982); qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); a state's Eleventh Amendment immunity, *P.R. Aqueduct*, 506 U.S. at 144–45; and rights under the Double Jeopardy Clause, *Abney v. United States*, 431 U.S. 651, 660 (1977).

Despite its rulings in this line of cases, the Supreme Court has declined to derive a rule that the denial of any type of immunity from suit is immediately appealable.  *Hallock*, 546 U.S. at 351.  Such a rule would go too far, the Supreme Court held, because "collateral order appeal would be a matter of right whenever the Government lost a motion to dismiss under the Tort Claims Act, or a federal officer lost

---

[2] Because these three conditions were first set forth in *Cohen*, 337 U.S. at 546, this test is often referred to as the *Cohen* test.

one on a *Bivens* action," and "§ 1291 would fade out whenever the Government or an official lost an early round." *Id.* at 353–54; *see also Digit. Equip. Corp.*, 511 U.S. at 873 (explaining that the focus on a "right not to stand trial" is misplaced because "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial'"). Therefore, *Hallock* held that the third prong of the collateral order doctrine is satisfied only if denying an immediate appeal and requiring the defendant to stand trial would "imperil a substantial public interest," such as "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." *Id.* at 352–53.

B

Here, the order denying the motion to dismiss the Childs' complaint was not one that "ends the litigation on the merits," and the district court did not certify its order for interlocutory review under 28 U.S.C. § 1292(b). Therefore, we have appellate jurisdiction over this order only if it qualifies as a final order under the collateral order doctrine.

The parties do not dispute that the first two prongs of the collateral order doctrine are satisfied: the order in this case conclusively determined the disputed question as to whether the defendants were entitled to derivative sovereign immunity under *Yearsley*, and that decision resolved an important issue separate from the merits of the action. Therefore, we consider the question whether the denial of derivative sovereign immunity is "effectively unreviewable" on appeal from a final judgment because such a denial would "imperil

a substantial public interest" that meets the requirements in *Hallock*. 546 U.S. at 353.

To make this determination, we begin by identifying the public interest in *Yearsley*. In *Yearsley*, plaintiffs sought damages from a company whose construction of dikes in the Missouri River "washed away" part of the plaintiffs' land. 309 U.S. at 19. Because the company's work "was all authorized and directed by the Government of the United States for the purpose of improving the navigation of this navigable river," and the government would be responsible for providing the plaintiffs just compensation if the action constituted a taking, *Yearsley* held "there is no ground for holding [the government's] agent liable who is simply acting under the authority thus validly conferred." *Id*. at 20–22. We later held that the derivative sovereign immunity established by *Yearsley* "is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications,'" and does not extend to "military contractors exercising a discretionary governmental function." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (citing *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)). Based on these precedents, the public interest underlying derivative sovereign immunity is extending the federal government's immunity from liability, in narrow circumstances, to government agents carrying out the federal government's directions.

Having identified the public interest at stake, we next turn to the question whether this public interest is a substantial one that meets the standard in *Hallock*. Our inquiry is guided by cases considering analogous claims of immunity. Although we have not directly considered the applicability of the

collateral order doctrine to the denial of claims of *derivative* sovereign immunity under *Yearsley*, we have previously held that the collateral order doctrine does not apply to orders denying assertions of sovereign immunity of the federal sovereign itself, *see State of Alaska v. United States*, 64 F.3d 1352, 1355 (9th Cir. 1995), or orders denying assertions of the government contractor defense, *Rodriguez v. Lockheed Martin Corp.*, 627 F.3d 1259, 1262 (9th Cir. 2010). Because both of these categories of claims are based on the sovereign immunity of the federal government, much like derivative sovereign immunity under *Yearsley*, we are guided by their analysis of whether the interest at issue meets the third prong of the collateral order doctrine.[3]

In *Alaska*, we held that Congress has carved "such broad exceptions" out of federal sovereign immunity by statute that the United States effectively surrendered its right to be free from suit in its own courts. 64 F.3d at 1356 & n.7 (citing *Pullman Constr. Indus., Inc. v. United States*, 23 F.3d 1166, 1169 (7th Cir. 1994)). Therefore, "federal sovereign immunity is not best characterized as a 'right not to stand trial altogether,'" but is "more accurately considered a right to *prevail* at trial, *i.e.*, a defense to payment of damages." *Id.* at 1355. We explained that the public interest in reviewing the denial of federal sovereign immunity is not "weightier than the societal interests advanced by the ordinary operation of final judgment principles," because the only hardship

---

[3] Indeed, the government contractor defense and derivative sovereign immunity both derived from *Yearsley*. *See In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d at 1001 (holding that the Supreme Court "planted the seeds of the government contractor defense" in *Yearsley*, before expanding the doctrine in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988)).

imposed by postponing review is "the need to prepare for trials." *Id.* at 1356 (quoting *Digit. Equip. Corp.*, 511 U.S. at 879). We therefore concluded that "[t]he interest served by federal sovereign immunity (the United States' freedom from paying damages without Congressional consent) may be served equally well if review follows a final judgment on the merits," and therefore an order denying federal sovereign immunity is not an immediately appealable collateral order. *Id.* at 1355.

Like derivative sovereign immunity, the government contractor defense "shields contractors from tort liability in state or federal actions where plaintiffs allege they sustained injuries as a result of exposure to defective products or equipment manufactured or supplied under a government contract." *Rodriguez*, 627 F.3d at 1265. *Rodriguez* held that the government contractor defense provided "only a corollary financial benefit flowing from *the government's* sovereign immunity." *Id.* at 1266. Therefore, an order denying the government contractor defense could be reviewed effectively after final judgment and was not immediately appealable. *Id.*

Our conclusion in *Alaska* that the interest served by federal sovereign immunity (*i.e.*, giving the government a defense to payment of damages) "may be served equally well if review follows a final judgment on the merits," 64 F.3d at 1355, is applicable to parties claiming derivative sovereign immunity under *Yearsley*, *see* 309 U.S. at 19–20. And our reasoning in *Rodriguez* that the interest served by the government contractor immunity (*i.e.*, giving contractors a shield from financial liability) can be vindicated after trial, *see* 627 F.3d at 1266, is also applicable to parties claiming derivative sovereign immunity. Therefore, the reasoning of *Alaska* and *Rodriguez* compels the conclusion that it would

not "imperil a substantial public interest," *Hallock*, 546 U.S. at 353, to require a government contractor with derivative sovereign immunity under *Yearsley* to stand trial.  To the contrary, immediate appellate review of such an order would be "simply abbreviating litigation troublesome to Government employees," which the Supreme Court has held is an insufficient basis to apply the collateral order doctrine. *Id.*; *see also Alaska*, 64 F.3d at 1356.

Because the denial of derivative sovereign immunity under *Yearsley* is effectively reviewable after trial, the third prong of the collateral order doctrine is not satisfied. Therefore, we hold that the denial of a motion to dismiss on the ground of derivative sovereign immunity under *Yearsley* is not immediately appealable under the collateral order doctrine.  In reaching this conclusion, we join the Fifth Circuit's well-reasoned conclusion that the denial of derivative sovereign immunity under *Yearsley* is not immediately appealable.  *Martin v. Halliburton*, 618 F.3d 476, 485 & n.14 (5th Cir. 2010).

SDFH and Lincoln argue that our reasoning in *Alaska* and *Rodriguez* has been undercut by the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).  In *Campbell*, the Supreme Court considered whether a federal contractor who violated the Telephone Consumer Protection Act by sending text messages to individuals who had not agreed to receive them could claim derivative sovereign immunity under *Yearsley. See id.* at 156.  In the course of holding that a party is not entitled to derivative sovereign immunity if it violates both federal law and the Government's explicit instructions, the Court in passing framed the question presented as whether a contractor was "immune from suit" under *Yearsley. Id.* at 166.  According

to the defendants, this passing reference overrules the reasoning in *Alaska* and *Rodriguez* that federal sovereign immunity and government contractor immunity protected defendants from liability, not immunity from suit.

We disagree. The few brief references in *Campbell-Ewald*—which merely restates the Supreme Court's longstanding classification of federal sovereign immunity as immunity from suit, *see, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)—have not "undercut the theory or reasoning underlying" *Alaska* and *Rodriguez* "in such a way that the cases are clearly irreconcilable," *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Unlike *Campbell-Ewald*, which considered the scope of a government contractor's immunity, *Alaska* and *Rodriguez* analyzed whether the interests at stake when a district court denies a motion to dismiss based on a claim of federal sovereign immunity or the government contractor defense are important enough to merit an immediate appeal. This is exactly the inquiry required by *Hallock*. *Campbell-Ewald*'s passing comments do not impact our conclusions in *Alaska* and *Rodriguez* that the interest in avoiding a judgment of damages is insufficiently weighty to satisfy the third prong of the collateral order doctrine. "[I]t is not mere avoidance of a trial, but avoidance of a trial that would imperil *a substantial public interest*, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Hallock*, 546 U.S. at 353 (emphasis added) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).[4]

---

[4] Because the third prong of the collateral order doctrine requires consideration of whether being forced to stand trial would imperil a substantial public interest, *Hallock*, 546 U.S. at 353, SDFH's and Lincoln's reliance on *Cunningham v. General Dynamics Information*

III

The district court's order was not an immediately appealable collateral order, and SDFH and Lincoln fail to identify any other statutory basis that permits us to exercise jurisdiction to hear the appeal. Therefore, we lack appellate jurisdiction under 28 U.S.C. § 1291. *See Cohen*, 337 U.S. at 545–47.

**DISMISSED.**

---

*Technology, Inc.*, 888 F.3d 640, 649–51 (4th Cir. 2018), is misplaced. Although *Cunningham* stated that derivative sovereign immunity under *Yearsley* provides immunity from suit, it did not address the distinct question whether an order denying derivative sovereign immunity would imperil a substantial public interest. For the same reason, SDFH and Lincoln's attempt to analogize derivative sovereign immunity to qualified immunity fails, because the denial of qualified immunity would impact the substantial public interest in inducing "officials to show reasonable initiative when the relevant law is not 'clearly established.'" *Hallock*, 546 U.S. at 353 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). By contrast, the denial of derivative sovereign immunity does not imperil any similarly substantial public interest. *See supra* at 12.