FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ESTATE OF JILL ANN ESCHE; SIERRA JILL WOFFORD, by and through her guardian ad litem Wayne Wofford; CAMRON SCOTT ESCHE, *Plaintiffs - Appellees*, v. MARTA J. BUNUEL-JORDANA, M.D.; CAITLIN E. HERSCHEL, RN; CAROLINE VASENDIN, M.D.; JOHANNA GRUEN Ph. D.; MEAGEN SMITH, *Defendants - Appellants*, and RENOWN REGIONAL MEDICAL CENTER, *Defendant*. | No. 24-6244 D.C. No. 3:21-cv-00520-MMD-CLB OPINION |

ESTATE OF JILL ANN ESCHE;
SIERRA JILL WOFFORD, by and
through her guardian ad litem Wayne
Wofford; CAMRON SCOTT
ESCHE,

        *Plaintiffs - Appellees*,

  v.

RENOWN REGIONAL MEDICAL
CENTER,

        *Defendant - Appellant*,

and

MARTA J. BUNUEL-JORDANA,
M.D., CAROLINE VASENDIN,
M.D., JOHANNA GRUEN Ph. D.,
MEAGEN SMITH, CAITLIN E.
HERSCHEL,

        *Defendants*.

No. 24-6245

D.C. No.
3:21-cv-00520-
MMD-CLB

ESTATE OF JILL ANN ESCHE;
SIERRA JILL WOFFORD, by and
through her guardian ad litem Wayne
Wofford; CAMRON SCOTT
ESCHE,

No. 24-6382

D.C. No.
3:21-cv-00520-
MMD-CLB

*Plaintiffs - Appellants*,

v.

RENOWN REGIONAL MEDICAL CENTER; MARTA J. BUNUEL-JORDANA; CAROLINE VASENDIN; JOHANNA GRUEN Ph. D.; MEAGEN SMITH; CAITLIN E. HERSCHEL,

*Defendants - Appellees*.

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, District Judge, Presiding

Argued and Submitted August 20, 2025
Pasadena, California

Filed September 29, 2025

Before: Marsha S. Berzon, Mark J. Bennett, and Jennifer Sung, Circuit Judges.

Opinion by Judge Berzon

# SUMMARY[*]

## Collateral Order Doctrine

The panel dismissed for lack of jurisdiction interlocutory appeals brought by Renown Regional Medical Center and others (together, "Renown"), holding that the district court's denial of Renown's good-faith defense to 42 U.S.C. § 1983 liability was not immediately appealable under the collateral order doctrine.

Plaintiffs allege that Renown, acting under color of state law, violated Jill Esche's federal constitutional rights and Nevada law when it among other things, involuntarily hospitalized her and then allowed her to leave in so fragile a condition that she died outside near the hospital that night. The district court granted Renown's motion for summary judgment on some claims but denied its assertion of a good-faith defense as to the remaining § 1983 claims. Renown asserted that it was not liable because it acted in compliance with Nevada's involuntary-commitment statutes.

The panel held that although on the merits the case raised troubling questions, the district court's denial of Renown's good-faith defense to § 1983 liability was not immediately appealable under the collateral order doctrine, so there was no decision within the panel's jurisdiction to review. The good-faith defense is a defense to § 1983 liability and not an immunity from suit. An erroneous ruling on liability may be reviewed effectively on appeal from final judgment. Thus,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the collateral order doctrine does not apply, and the panel lacked jurisdiction over the consolidated appeals.

The panel dismissed plaintiffs' cross-appeal of the merits of their constitutional claims for lack of pendent jurisdiction because there was no independently reviewable issue before the panel.

## COUNSEL

Kerry S. Doyle (argued) and Roger S. Doyle, Doyle Law Office PLLC, Reno, Nevada; Steve H. Osborne, Law Office of Stephen H. Osborne, Reno, Nevada; for Plaintiffs-Appellees.

Lorie S. Gildea (argued), Eric W. Swanis, and Elliot T. Anderson, Greenberg Traurig LLP, Las Vegas, Nevada; Dominique A. Pollara, Pollara Law Group, Sacramento, California; William D. Cope, Law Office of William D. Cope, Reno, Nevada; for Defendants-Appellants.

Jacob Z. Goldstein, Hall Prangle & Schoonveld LLC, Chicago, Illinois, for Amicus Curiae Nevada Hospital Association.

# OPINION

BERZON, Circuit Judge:

On its merits, this case raises troubling questions: Did private health-care providers acting under color of state law violate a patient's constitutional rights when, without a court order, they forcibly held her in a hospital for a month; subjected her to medical, including psychiatric and prenatal, treatment; did not allow her to contact a lawyer; and then, after her daughter was born, allowed her to leave in so fragile a condition that she died outside near the hospital that night? But we cannot answer those questions today. The district court's denial of the health-care providers' good-faith defense to § 1983 liability is not immediately appealable under the collateral order doctrine, so there is no decision within our jurisdiction to review. That conclusion eliminates any basis for our jurisdiction over the cross-appeal brought by the patient's survivors. We accordingly dismiss these appeals.

## I.   BACKGROUND

We briefly recount the facts in the summary judgment record before the district court. On October 20, 2020, Jill Esche, then seven months pregnant, was admitted to Renown Regional Medical Center with severe hypertension. She was acting erratically. Believing that Esche's aggressive and agitated behavior was caused by mental illness, and concerned that Esche posed a danger to herself and her fetus, a hospital psychiatrist petitioned a Nevada court for Esche to be involuntarily admitted for mental health treatment under the state statutory scheme governing involuntary commitments. *See generally* NEV. REV. STAT. ch. 433A.

While the petition was pending, hospital staff—assertedly pursuant to the same statutory scheme—repeatedly declared that Esche had not been "medically cleared" to appear at her commitment hearing, kept her in the hospital, and administered psychiatric drugs and other medical treatments to Esche, often over her objection. According to Esche's medical records, staff confined her to one room; restricted her phone use; precluded her from having visitors until the birth; never told her that a public defender had been appointed to represent her in the commitment proceeding; and instructed her not to raise with her boyfriend (the father of her child) or mother her desire to contact a lawyer. On November 21, 2020, just two days after she gave birth to her daughter by C-section, the hospital medical staff decided to withdraw the commitment petition (but had not yet done so). Esche was then allowed to leave the hospital. She did so against doctors' advice and despite exhibiting signs of respiratory and emotional distress. Within hours, she was found dead on a porch not far from the hospital entrance.

Esche's estate and survivors, including her baby daughter, Sierra Jill Wofford, (together, the "Estate") sued the hospital and its employees Marta J. Bunuel-Jordana, Caroline Vasendin, Johanna Gruen, Maegen Smith, and Caitlin E. Herschel (together, "Renown"). [1] The Estate brought several federal constitutional claims under 42 U.S.C. § 1983, alleging that Renown violated Esche's Fourth Amendment right against unreasonable seizure as well as her Fourteenth Amendment substantive and procedural due process rights, and that the hospital was also liable for failing to train or supervise its employees. In

---

[1] Another defendant, Earle Oki, is not a party to these appeals.

addition, the Estate brought analogous unreasonable-seizure and due-process claims under the Nevada Constitution, a conspiracy claim, and claims for both general and medical negligence.

On cross-motions for partial summary judgment, Renown asserted a "good-faith" defense to the federal and state constitutional claims, contending that it was not liable because it had acted in compliance with the Nevada involuntary-commitment statutes. The district court agreed that Renown had complied with the statutory scheme, but held that the good-faith defense did not apply because Renown was neither required by law nor directed by a public official to hold Esche involuntarily. The court then granted summary judgment to Renown on the merits of the state and federal unreasonable-seizure claims and of the alleged violations of Esche's state and federal procedural due process rights. But it allowed the due process, conspiracy, and failure-to-train-or-supervise claims to proceed on the theory that Renown violated Esche's right to substantive due process when it allowed her to leave the hospital in fragile condition. The court also denied Renown summary judgment on the general negligence claim. None of the parties moved for summary judgment on the medical negligence claim, which remains pending.

Before the surviving claims could go to trial, Renown appealed the district court's denial of its good-faith defense.[2] The Estate responded by cross-appealing its losses on the merits of most of its constitutional claims. We consolidated the appeals and ordered the parties to brief (1) whether we

---

[2] There are two Renown appeals, identical in substance, because Renown Regional Medical Center and the employee defendants filed separate notices of appeal.

have jurisdiction over Renown's appeals under the collateral order doctrine and (2) whether we have pendent jurisdiction over the Estate's cross-appeal.

## II.  DISCUSSION

### A.  The Collateral Order Doctrine

With several exceptions not relevant here, federal courts of appeals only "have jurisdiction of appeals from all *final decisions* of the district courts." 28 U.S.C. § 1291 (emphasis added). A final decision is, ordinarily, one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (citation modified). Under the collateral order doctrine, however, the Supreme Court has construed "final decisions" to include "a narrow class of decisions that do not terminate the litigation, but are sufficiently important and collateral to the merits that they should nonetheless be treated as final." *Will v. Hallock*, 546 U.S. 345, 347 (2006) (citation modified).

To fall within the collateral order doctrine, first recognized in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), an order must satisfy three "stringent" requirements: It must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349 (citation modified) (first quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); and then quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). Judicial application of the doctrine must remain "narrow and selective," so as not to undermine "the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been

entered," *id.* at 350, or Congress's choice of "rulemaking, not expansion by court decision, as the preferred means for determining whether and when prejudgment orders should be immediately appealable," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) (citation modified).

Moreover, not every "order denying a claim of right to prevail without trial satisfies the third condition." *Will*, 546 U.S. at 351. An order is "effectively unreviewable" after final judgment only if requiring the defendant to stand trial "would imperil a substantial public interest" beyond the defendant's desire to avoid the burden of further proceedings. *Id.* at 353.[3]

The determination whether this last condition is met is not case-by-case but instead looks at "the entire category to which a claim belongs." *Digit. Equip.*, 511 U.S. at 868. For example, orders denying absolute presidential immunity are immediately appealable to honor the "compelling" interest in maintaining the separation of powers. *Will*, 546 U.S. at 352 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 758 (1982)). Orders denying qualified immunity to public officials are immediately appealable to avoid "the threatened disruption of governmental functions, and fear of inhibiting able people from exercising discretion in public service." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Orders denying Eleventh Amendment immunity are immediately appealable "to ensure vindication of a State's dignitary interests." *Id.* (citing *P.R. Aqueduct*, 506 U.S. at 146). And orders refusing to dismiss an indictment on double jeopardy

---

[3] We do not address whether orders denying the good-faith defense meet the collateral order doctrine's first two conditions—that they be conclusive and collateral—because we hold that the third condition is not met. *See Digit. Equip.*, 511 U.S. at 868–69 & n.3.

grounds are immediately appealable to prevent the government from using its "enormous prosecutorial power" to undermine defendants' Fifth Amendment guarantee against the "embarrassment, expense and ordeal" of a repeat prosecution. *Id.* (quoting *Abney v. United States*, 431 U.S. 651, 661–62 (1977)). For each of these categories, "some particular value of a high order was marshaled in support of the interest in avoiding trial." *Id.*

Conversely, a defendant's run-of-the-mill interest in "limiting exposure to liability . . . is fully vindicable on appeal from final judgment." *Digit. Equip.*, 511 U.S. at 882. An order denying a defense to liability is therefore not immediately appealable, even though the erroneous denial of a liability defense may unnecessarily subject the defendant to trial. *See, e.g.*, *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1140 (9th Cir. 2013). "That a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment has never sufficed" to qualify for immediate appeal under the collateral order doctrine. *Mohawk Indus.*, 558 U.S. at 107 (citation modified) (quoting *Digit. Equip.*, 511 U.S. at 872).

## B. Renown's Appeals of the Denial of Its Good-Faith Defense

The district court's summary judgment order did not end the litigation on the merits. So we have jurisdiction over Renown's appeals only if they fall under the collateral order doctrine.[4]

Whether the collateral order doctrine applies to Renown's appeals hinges first on whether the good-faith

---

[4] The district court was not asked to and did not certify its order for interlocutory appeal under 28 U.S.C. § 1292(b).

defense is a defense to liability or an immunity from suit. *See, e.g.*, *Nunag-Tanedo*, 711 F.3d at 1140 (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 43 (1995)). If the good-faith defense is simply a defense to liability, decisions denying the defense can be adequately reviewed after final judgment. *Id.* If the good-faith defense is instead an immunity from suit, we must determine whether delaying appellate review of rulings on such a defense would imperil a substantial public interest. *See, e.g.*, *Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092, 1098 (9th Cir. 2022). We proceed keeping in mind the Supreme Court's instruction to "view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Digit. Equip.*, 511 U.S. at 873.[5]

The causes of action Renown seeks to appeal under the collateral order doctrine all are alleged to arise under 42 U.S.C. § 1983. Section 1983 provides a private right of action against any "person who, under color of any [state] statute, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Although § 1983 claims are most often brought against government officials and entities, they may also be brought against private parties whose conduct is "fairly attributable to the State." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937

---

[5] Renown asserted the good-faith defense against both the federal and state constitutional claims, but its briefs in both the district court and on appeal focused entirely on the defense as it applies to § 1983 claims. Renown points to no authority recognizing a good-faith defense to claims brought under the Nevada Constitution, so we confine our analysis to § 1983. *See, e.g.*, *Padgett v. Wright*, 587 F.3d 983, 986 n.2 (9th Cir. 2009).

(1982)). Renown did not contest in the district court and does not contest here that it was a "state actor" with regard to the Estate's § 1983 claims. *See Cummings v. Charter Hosp. of Las Vegas, Inc.*, 896 P.2d 1137, 1144 (Nev. 1995) (holding that private parties are state actors when detaining individuals against their will under Nevada's involuntary-commitment statutes); *cf. Jensen v. Lane County*, 222 F.3d 570, 574–76 (9th Cir. 2000) (holding that a private physician was a state actor when he signed an order under Oregon law to involuntarily commit the plaintiff); *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 751–56 (9th Cir. 2020) (holding that private health-care providers were state actors when they obtained court orders under Washington law to involuntarily commit the plaintiff and forcibly treated him).

That both public and private parties may be state actors under § 1983 does not mean the law treats them equivalently in every respect. Most pertinent here, the Supreme Court has granted to public-official defendants a qualified immunity from suit under § 1983, but has refused to extend this qualified immunity to most private-party defendants.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has explained that it is rooted not only in the common law, *see Richardson v. McKnight*, 521 U.S. 399, 403–04 (1997),[6] but also in "the special policy concerns

---

[6] That qualified immunity as it has developed under § 1983 has common-law roots has been questioned in recent years. *See, e.g.*, *Anderson v. Creighton*, 483 U.S. 635, 645 (1987); *Ziglar v. Abbasi*, 582 U.S. 120,

involved in suing government officials," including the needs "to preserve their ability to serve the public good" and "to ensure that talented candidates [a]re not deterred by the threat of damages suits from entering public service," *Wyatt v. Cole*, 504 U.S. 158, 167 (1992). Qualified immunity thus serves "to safeguard government, and thereby to protect the public at large, not to benefit its agents." *Id.* at 168. To mitigate the "costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service"—qualified immunity provides "an *immunity from suit* rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526 (citation omitted).

The historical basis and policy rationales for qualified immunity usually do not apply when the defendant is a private party not serving at the government's behest. In *Wyatt*, which concerned the use by a private party of a state-law replevin procedure to recover seized goods, the Court explained that "unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes." 504 U.S. at 168. Because "private parties hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good," granting them qualified immunity "would have no bearing on whether public officials are able to act forcefully and decisively in their jobs or on whether qualified applicants enter public service." *Id.* Similarly, in *Richardson*, the Court held that qualified

---

159 (2017) (Thomas, J., concurring in part and concurring in the judgment); William Baude, *Is Qualified Immunity Unlawful?*, 106 CAL. L. REV. 45, 55–61 (2018).

immunity was not available to private prison guards, reasoning that there was neither historical support nor anything "special enough about the job or about its organizational structure that would warrant providing these private prison guards with a governmental immunity." 521 U.S. at 412. *Richardson* expressly rejected the notion that qualified immunity could be justified by the "mere performance of a governmental function . . . , especially for a private person who performs a job without government supervision or direction." *Id.* at 408–09 (citation omitted). Consistent with these decisions, we have concluded that a variety of private § 1983 defendants who meet the state-actor criteria are nonetheless ineligible for qualified immunity. *See, e.g.*, *Clement v. City of Glendale*, 518 F.3d 1090, 1096 (9th Cir. 2008) (private towing company); *Jensen*, 222 F.3d at 576–79 (9th Cir. 2000) (private physician); *Ace Beverage Co. v. Lockheed Info. Mgmt. Servs.*, 144 F.3d 1218, 1219–20 (9th Cir. 1998) (private parking-ticket processing firm); *Halvorsen v. Baird*, 146 F.3d 680, 685 (9th Cir. 1998) (private firm operating detox facility).

A private party may, to be sure, properly assert qualified immunity when "hired by the government to assist in carrying out its work," whether as an independent contractor or as an employee. *Filarsky*, 566 U.S. at 393. But Renown does not assert immunity as an independent contractor acting on behalf of the government, and there is no evidence in the record that would support such a characterization. Section 1983 immunity from suit does not attach simply because a private defendant performs a task that can be characterized as a "governmental function." *Richardson*, 521 U.S. at 408–09. Rather, the historical and policy rationales for qualified immunity apply to independent

contractors because the government often "must look outside its permanent work force to secure the services of private individuals" to carry out its work directly on its behalf. *Filarsky*, 566 U.S. at 390.

The Supreme Court did leave open in *Wyatt* and *Richardson* the possibility that private parties sued under § 1983 could raise "an affirmative defense based on good faith and/or probable cause." *Richardson*, 521 U.S. at 413 (quoting *Wyatt*, 504 U.S. at 169). The Supreme Court has not decided whether private § 1983 defendants may raise such a defense, but we have recognized a good-faith defense to § 1983 claims in a handful of cases.

In *Clement*, we held that a private towing firm accused of violating the plaintiff's due process right could raise a good-faith defense when "[t]he company did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions." 518 F.3d at 1097. Although the plaintiff never received the constitutionally required notice before her car was impounded, "[t]he tow was authorized by the police department, conducted under close police supervision and appeared to be permissible under both local ordinance and state law." *Id.* Further, the company could not have known whether the police had provided the plaintiff sufficient notice before instructing the company to tow her car. *Id.* Under those circumstances, the company could invoke a good-faith defense. *Id.*

After the Supreme Court overturned decades of precedent and held that public-sector unions could no longer collect compulsory "agency fees" from nonmembers, *see Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 585 U.S. 878 (2018), we applied the good-faith defense to a union

sued by state workers seeking to recoup money that (under *Janus* but not the pre-*Janus* case law) had been unconstitutionally collected from them, *Danielson v. Inslee*, 945 F.3d 1096, 1099 (9th Cir. 2019). We held the defense barred retrospective liability for conduct that, when it occurred, "was sanctioned not only by state law, but also by directly on-point Supreme Court precedent." *Id.* at 1104. As a matter of "equality and fairness," we reasoned, "private parties should be entitled to rely on binding judicial pronouncements and state law without concern that they will be held retroactively liable for changing precedents." *Id.* at 1100–01. In a similar agency-fee case, we extended the defense in *Danielson* to municipal defendants. *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 71–75 (9th Cir. 2022).

Relying on *Clement* and *Danielson*, Renown contends that it was entitled to summary judgment on the Estate's § 1983 claims because it "complied with [Nevada Revised Statutes] Chapter 433A's involuntary commitment process" and "had no reason to know [its] actions would be subject to constitutional challenge." According to Renown, this good-faith defense operates as an immunity from suit akin to qualified immunity.

Without addressing whether Renown is entitled to a good-faith defense here, [7] we conclude that under our

---

[7] Likewise, as we conclude that we do not have jurisdiction over these appeals, we do not address whether the district court was correct in limiting the good-faith defense to the factual paradigms of *Clement* and *Danielson*. We do note that even if, as Renown urges, the good-faith defense applies to conduct authorized or directed by statute, the defense would not necessarily cover all the factual bases underlying the Estate's constitutional claims. We are skeptical that the Nevada statutory scheme can be read as directing a health-care provider to administer medical or

precedents, the good-faith defense is a defense to § 1983 liability and not an immunity from suit. In *Danielson*, we distinguished "between an 'immunity from suit' and other kinds of legal defenses," explaining that although most "private parties cannot assert an immunity to suit" under § 1983, the defense recognized in *Clement* was a "good faith defense to liability." *Danielson*, 945 F.3d at 1099–1100 (quoting *Richardson*, 521 U.S. at 403). As a result, we held that the defense "shield[ed] the Union from retrospective monetary liability." *Id.* at 1104. *Allen* emphasized the same distinction, contrasting the municipality's good-faith defense with an immunity from suit. 38 F.4th at 73. Although the municipality did not have any special governmental immunity from suit, we concluded that it was entitled to a "good faith defense to retrospective § 1983 liability." *Id.* at 75. Our case law thus forecloses Renown's effort to frame the good-faith defense as an immunity from suit.

Despite conceding that *Danielson* and *Allen* characterized the defense as one against liability, Renown protests that these cases "do not address appellate jurisdiction or engage in the public interest analysis the jurisdiction cases require." Renown's argument misapprehends the relevant inquiry. Under the collateral order doctrine, delaying review of an order denying a liability defense does not imperil a substantial public interest, because "immunity from liability can be protected by a post-judgment appeal." *SolarCity Corp. v. Salt River*

---

psychiatric treatment against a patient's will and without any judicial or neutral administrative due process. *See* NEV. REV. STAT. § 433A.165 (2019). And there is no statutory provision empowering or compelling a provider to restrict patients' visitors or phone use or allowing a provider to hinder patients from contacting counsel.

*Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 725 (9th Cir. 2017) (citing *Nunag-Tanedo*, 711 F.3d at 1139–40). Only if we had held in *Danielson* and *Allen* that the good-faith defense conferred an immunity from suit would we also need to analyze the public interest in permitting immediate appeals. *See, e.g.*, *Childs*, 22 F.4th at 1096; *SolarCity*, 859 F.3d at 727 n.3; *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015–16 (9th Cir. 2013).

Renown also tries to sidestep our earlier decisions by suggesting that a defense becomes an immunity from suit if it implicates sufficiently important policy considerations. Analogizing to qualified-immunity cases, Renown contends that the good-faith defense serves the same interests of "help[ing] to avoid unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suit." As a result, Renown believes, it deserves the same immunity that would be available to government officials engaged in the same conduct.

Renown's argument is a misguided attempt to transmute the good-faith defense into qualified immunity under a different name. "The rationales behind the two doctrines, and their limitations, are not interchangeable." *Danielson*, 945 F.3d at 1101. So, putting aside whether a health-care provider's conduct under Nevada's involuntary-commitment statutes is accurately described as a public duty, public service, or work of government, the policy interests undergirding qualified immunity—centering on protecting distinctly governmental interests—are not relevant here. Renown could not have and did not invoke qualified immunity. Instead, it invoked the good-faith defense.

While qualified immunity seeks to ensure the effective operation of government, the good-faith defense "arises out of general principles of equality and fairness"—in other words, "the innocence of [the defendant's] actions." *Danielson*, 945 F.3d at 1101. *Wyatt* held that "principles of equality and fairness" could justify "some protection from liability" but "are not sufficiently similar to the traditional purposes of qualified immunity" to warrant a comparable immunity from suit for "private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid." 504 U.S. at 168. Renown seeks just that: immunity from suit, based on "principles of equality and fairness," for private defendants who "rel[y] on presumptively-valid state law." Renown does not explain why the same interests rejected as insufficient to merit immunity in *Wyatt* suffice here. We thus adhere to *Wyatt*'s recognition that even if private defendants "acted with probable cause and in good faith . . . under a statute they reasonably believed was valid," their entitlement to such a "good faith defense" would not justify granting them an "immediately appealable immunity" from suit. *Id.* at 165–66 & n.2.

In addition, an asserted immunity from § 1983 suit must also be "firmly rooted in the common law." *Richardson*, 521 U.S. at 403 (quoting *Wyatt*, 504 U.S. at 164). Although historical tradition does not define an immunity's "precise contours," *Danielson*, 945 F.3d at 1101 (quoting *Anderson*, 483 U.S. at 645), we previously found scant evidence of a common-law tradition of immunity for doctors acting under involuntary-commitment statutes, *see Jensen*, 222 F.3d at 576–77. We reject Renown's suggestion that *Filarsky* casts doubt on our conclusion that immunity from suit is inapplicable here. *Filarsky* addressed only the history of

immunity for private individuals "working for" the government, whether as employees or as independent contractors. 566 U.S. at 384–89.

Because the good-faith defense is a defense to liability, Renown's interest in collateral review is ultimately its interest—shared by every defendant—in "limiting exposure to liability." *Digit. Equip.*, 511 U.S. at 882. "An erroneous ruling on liability may be reviewed effectively on appeal from final judgment." *Swint*, 514 U.S. at 43. Thus, the collateral order doctrine does not apply, and we must dismiss Renown's appeals for lack of jurisdiction.

## C. The Estate's Cross-Appeal of the Merits of Its Constitutional Claims

Our conclusion above also disposes of the Estate's cross-appeal concerning the Fourth and Fourteenth Amendment claims. The only basis for our jurisdiction asserted by the Estate is the doctrine of pendent appellate jurisdiction, under which "we may review an otherwise non-appealable ruling when it is inextricably intertwined with or necessary to ensure meaningful review of the order properly before us." *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1154 (9th Cir. 2018) (citation modified). Because no "independently reviewable issue" is properly before us today, we do not have pendent jurisdiction over the Estate's cross-appeal. *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000). So we dismiss the cross-appeal as well.

## CONCLUSION

The district court's summary judgment order did not fully resolve this case on the merits, and neither the collateral order doctrine nor pendent appellate jurisdiction applies. We therefore dismiss the parties' appeals for lack of jurisdiction

under 28 U.S.C. § 1291. Any further appeals in this matter shall be assigned to this panel. *See* 9th Cir. G.O. 3.6(d).

**DISMISSED.**